Allen Lichtenstein
General Counsel, ACLU of Nevada
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
702-433-2666 - phone
702-433-9591 - fax
alichtensteinlaw@aol.com

Lee Rowland
Staff Attorney, ACLU of Nevada
NV Bar No. 10209
732 South Sixth Street, Suite 200A
Las Vegas, NV 89101
702-366-1902 -phone
702-366-1331-fax
rowland@aclunv.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

COYOTE PUBLISHING, INC., dba High Desert Advocate; HOWARD COPELAN, Publisher of the High Desert Advocate; BOBBI A. DAVIS, dba the Shady Lady Ranch; DR PARTNERS, dba Las Vegas CityLife, a Nevada General Partnership; STEVE SEBELIUS, Editor of Las Vegas CityLife;

Plaintiffs,

v.

DEAN HELLER, in his official capacity as Secretary of State of the State of Nevada; GEORGE CHANOS, in his official capacity as Attorney General of the State of Nevada; DAVID ROGER in his official capacity as District Attorney of Clark County, Nevada;

Defendants.

CV-06-329-JCM-PAL

**PLAINTIFFS'** ORDER
**FOR SUMMARY JUDGMENT**

### I. Introduction

On or about March 6, 2006, Plaintiffs filed their Amended Verified Complaint alleging that N.R.S.§§ 201.430 and 201.440 are unconstitutional on their face, and requesting that the Court enjoin these statutes' enforcement. These statutes prohibit all truthful and non-misleading advertising concerning legal, licensed brothels in those Nevada counties that do not have licensed brothels, as

well as in all public theaters and on all public streets and highways throughout the State.

The parties filed cross-motions for summary judgment, a hearing for which was held on July 12, 2007. Allen Lichtenstein and Lee Rowland of the ACLU of Nevada appeared on behalf of Plaintiffs: Coyote Publishing, Inc. Owner of the High Desert Advocate, a newspaper located in West Wendover, Nevada; Howard Copelan, its publisher and editor; DR Partners, dba Las Vegas CityLife, a weekly newspaper in distributed in Clark County and throughout Nevada; Steve Sebelius its editor; and Bobbi A. Davis dba the Shady Lady Ranch a licensed brothel in Nye County, Nevada.

Edward T. Reed appeared for Defendants the Attorney General and Secretary of State of the State of Nevada. Robert J. Gower appeared for Defendant the District Attorney of Clark County Nevada. The parties stipulated to drop the Secretary of State as a defendant.

Plaintiffs' Complaint lists causes of action under 18 U.S.C. § 1983 facially challenging Nevada Revised Statute (N.R.S.) §§ 201.430 and 201.440 as violative of the First and Fourteenth Amendments of the United States Constitution and Article 1, Section 9 of the Nevada Constitution and seeking to enjoin the statutes' enforcement by Defendants. Plaintiffs moved for summary judgment on these issues. Defendants filed a cross-motion for summary judgment.

**II.   Standards for summary judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See*, *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1339 (9th Cir. 1980); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).

The parties agreed that there are no material facts at issue, and that the constitutionally of the statutes at issue are matters of law that are appropriate for summary judgment adjudication.

**III.   Facts**

N.R.S .§ 244.345 (8) prohibits the licensing of legal houses of prostitution in counties with population exceeding 400,000. This includes Clark County, Nevada, where Las Vegas CityLife is located, and most of its distribution occurs. Legal prostitution is also in other Nevada counties at

2

county option. N.R.S. § 201.430 and N.R.S. § 201.440 restrict advertising of legal, licensed brothels.[1]

---

[1]   N.R.S. § 201.430 states the following:

1.    It is unlawful for any person engaged in conduct which is unlawful pursuant to paragraph (b) of subsection 1 of N.R.S.§ 207.030, or any owner, operator, agent or employee of a house of prostitution, or anyone acting on behalf of any such person, to advertise the unlawful conduct or any house of prostitution:
 (a)    In any public theater, on the public streets of any city  or town, or on any public highway; or
(b)    In any county, city or town where prostitution is prohibited by local ordinance or where the licensing of a house of prostitution is prohibited by state statute.
2.    It is unlawful for any person knowingly to prepare or print an advertisement concerning a house of prostitution not licensed for that purpose pursuant to N.R.S. § 244.345, or conduct which is unlawful pursuant to paragraph (b) of subsection 1 of N.R.S. § 207.030, in any county, city or town where prostitution is prohibited by local ordinance or where the licensing of a house of prostitution is prohibited by state statute.
3.    Inclusion in any display, handbill or publication of the address, location or telephone number of a house of prostitution or of identification of a means of transportation to such a house, or of directions telling how to obtain any such information, constitutes prima facie evidence of advertising for the purposes of this section.
 4.    Any person, company, association or corporation violating the provisions of this section shall be punished:
 (a)    For the first violation within a 3-year period, by imprisonment in the county jail for not more than 6 months, or by a fine of not more than $1,000, or by both fine and imprisonment.
 (b)    For a second violation within a 3-year period, by imprisonment in the county jail for not less than 30 days nor more than 6 months, and by a fine of not less than $250 nor more than $1,000.
 ( c)    For a third or subsequent violation within a 3-year period, by imprisonment in the county jail for 6 months and by a fine of not less than $250 nor more than $1,000.

N.R.S. § 201. 440 states the following:

 1.    In any county, city or town where prostitution is prohibited by local ordinance or where the licensing of a house of prostitution is prohibited by state statute, it is unlawful for any person, company, association or corporation knowingly to allow any person engaged in conduct which is unlawful pursuant to paragraph (b) of subsection 1 of N.R.S. § 207.030, or any owner, operator, agent or employee of a house of prostitution, or anyone acting on behalf of any such person,
to advertise a house of prostitution in his place of business.
2.    Any person, company, association or corporation that violates the provisions of this section shall be punished:
(a)    For the first violation within a 3-year period, by imprisonment in the county jail for not more than 6 months, or by a fine of not more than $1,000, or by both fine and imprisonment.
(b)    For a second violation within a 3-year period, by imprisonment in the

1    In addition to banning advertisements regarding illegal prostitution, N.R.S. § 201.430 prohibits legal brothels from advertising "[i]n any public theater, on the public streets of any city or town, or any public highway," throughout the state. *See* N.R.S. § 201.430 (1). The statute also completely bans legal brothels from engaging in advertising in counties where prostitution is illegal. For the purposes of the section, N.R.S. § 201.430(3) also makes disseminating certain information about brothels – such as their location – "prima facie evidence of advertising:"

> "[i]nclusion in any display, handbill or publication of the address, location, or telephone number of a house of prostitution or of identification of a means of transportation to such a house, or of directions telling how to obtain such information, constitutes prima facie evidence of advertising for the purposes of this section."

N.R.S. § 201.440 prohibits any person or business owner from allowing any person associated with a brothel to promote its use through advertisement in his or her place of business. Both N.R.S. § 201.430 and N.R.S. § 201.440 provide for criminal penalties. *See* N.R.S. §§ 201.330(4); 201.440(2).

**IV.    Analysis**

The statutes at issue are unconstitutional restrictions on free speech, insofar as they apply to legal, licensed brothels, as opposed to illegal prostitution. The provision establishing that providing certain information is "prima facie advertising" extends to more than commercial speech and is thus subject to strict scrutiny, a test it fails. The prohibitions on advertising legal brothels in certain public spaces and on advertising legal brothels in counties where prostitution is illegal are subject to the limitations on restrictions on commercial speech articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Substantial restrictions on non-misleading commercial speech that proposes a lawful transaction must directly advance a governmental interest and may not be any more extensive than necessary. *Central Hudson Gas &*

---

county jail for not less than 30 days nor more than 6 months, and by a fine of not less than $250 nor more than $1,000.
( c )    For a third or subsequent violation within a 3-year period, by imprisonment in the county jail for 6 months and by a fine of not less than $250 nor more than $1,000.

*Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Supreme Court jurisprudence mandates that non-misleading speech concerning lawful "vice" activities enjoy the same level of protection as other commercial speech. *See 44 Liquormart v. State of Rhode Island*, 517 U.S. 484, 513-514 (1996). The government bears the burden of showing that restrictions on truthful, non-misleading speech concerning lawful activities and products are related to protecting a substantial state interest. *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The government has not and cannot meet this burden.

### A. Prima facie evidence

N.R.S. § 201.430(3) attempts to regulate *any* publication of certain information regarding licensed brothels, such as their location, and extends to more than commercial speech. Therefore, the provision is subject to strict scrutiny. In *American Academy of Pain Management v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004), the Court noted the definition of commercial speech as set forth by the United States Supreme Court:

> "Commercial speech represents 'expression related solely to the economic interests of the speaker and its audience,' *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561, (1980), and 'does no more than propose a commercial transaction.' *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 752 (1976); *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554-55, (2001) (applying the *Central Hudson* analysis to tobacco advertising regulations)."

The *American Academy* Court also noted a three-part test for identifying commercial speech, stating that: "speech could properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech." 353 F.3d 1106, citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983); *Ass'n of Nat'l. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir.1994).

The definition of "prima facie evidence" of advertising contained in N.R.S. § 201.430(3) reaches far more than commercial speech and instead, defines a content-based restriction on fully-protected non-commercial expression. If speech is 'not purely commercial; -- that is, if it does more propose a commercial transaction – then it is entitled to full First Amendment protection." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). Regulations on fully protected speech are subject to strict scrutiny, and the burden is on the government to show that the regulation at issue

1  is narrowly tailored to bring about a compelling governmental interest. *Cornelius v. NAACP Legal Defense and Educational Fund,* 473 U.S. 788, 800 (1985). Moreover, under strict scrutiny, the government must choose the least restrictive means to further the articulated interest. *Sable Communications of California, Inc. v. Federal Comm'n,* 492 U.S. 115, 126 (1989); *Playboy Entertainment Group, Inc.*, 529 U.S. at 813; *See also, Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983).

Here, Defendants have demonstrated none of the elements required to meet the government's burden under strict scrutiny. They have identified no interest that is compelling. Nor have they shown that the statutes are the least restrictive means to effectively protect those compelling interests. Therefore the provisions restricting information about legal brothels as set forth in N.R.S. § 201.430(3) violate the United States Constitution.

**B.     Ban on legal brothel advertising on streets, highways and in theaters**

The complete ban on advertising in certain public spaces contained in N.R.S. § 201.430 unquestionably restricts commercial speech. For commercial speech restrictions to comport with constitutional standards a court must go through the four-part analysis as set forth in *Central Hudson*, 447 U.S. at 556.

> "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it must at least concern lawful activity and not be misleading. Next we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

The statutes restricts non-misleading advertisements that propose lawful transactions because they ban any advertisements and information concerning legal brothels. Neither statute contains any statement regarding what government interest they are protecting. Defendants have set forth two governmental interests purportedly advanced by this restriction – protection of children and a desire to limit the use of legal brothels.

**1.     Protection of children**

Defendants have not demonstrated that there is a substantial governmental interest in preventing children from seeing information or advertising for legal brothels. While legal

6

prostitution is a service that is clearly limited to adults, the same can be said for other products and services, such as alcoholic beverages, gaming and even automobiles. Moreover, any material that is deemed "harmful to minors" as set forth in N.R.S. § 201.257, cannot be displayed where minors can view it.

In his concurrence in *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 580 (2001) (THOMAS, J., concurring in judgment), a case that addressed the issue on restrictions on cigarette advertising, Justice Thomas noted that an approach limiting public advertising to only those products or services used by children would create absurd results.

> "It is difficult to see any stopping point to a rule that would allow a State to prohibit all speech in favor of an activity in which it is illegal for minors to engage. Presumably, the State could ban car advertisements in an effort to enforce its restrictions on underage driving. It could regulate advertisements urging people to vote, because children are not permitted to vote."

In fact, the Supreme Court has repeatedly stated that a concern for the protection of children cannot be used as justification for restrictions on information aimed at adults. As the Court noted in *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983) (examining advertising for contraceptives), "The level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox." *See also*, *Erznoznik v. Jacksonville*, 422 U.S. 205, 213-214 (1975)(city ordinance prohibiting the showing of films containing nudity by a drive-in theater); *Butler v. Michigan*, 352 U.S. 380, 383 (1957) (statute making it an offense to make available to general reading public a book having a potentially deleterious influence on youth); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997)(provisions seeking to protect minors from harmful material on the Internet); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000)(provision requiring cable operators either to scramble sexually explicit channels in full or limit programming on such channels to certain hours).

In *Lorillard,* 533 U.S. at 565-566, the Supreme Court invalidated a Massachusetts law that prohibited outdoor advertising of certain tobacco products within 1,000 feet of a school or playground. In doing so, the Court noted that the idea of protecting children from exposure to advertising of adult products, such as tobacco, could not sustain a law that prohibited that advertising

to adults. 533 U.S. at 564.

> "The State's interest in preventing underage tobacco use is substantial, and even compelling, but it is no less true that the sale and use of tobacco products by adults is a legal activity. We must consider that tobacco retailers and manufacturers have an interest in conveying truthful information about their products to adults, and adults have a corresponding interest in receiving truthful information about tobacco products. . . . As the State protects children from tobacco advertisements, tobacco manufacturers and retailers and their adult consumers still have a protected interest in communication."

### 2.    Limitation of legal prostitution

Defendants have also stated a purported state interest in limiting the market for legal prostitution. In *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513-514 (1996)("liquor price advertising"), the Court invalidated any "vice exception" to the constitutional protection afforded truthful commercial speech about lawful activities.  Defendants have argued that legal prostitution is different than other "vice" activities addressed in *44 Liquormart*. Defendants, however, have provided no legal authority to support this position and to contradict the language in *44 Liquormart*.

Because Defendants have failed to meet their burden of demonstrating that the provisions containing the prohibition of advertising of legal brothels on streets, highways and theaters throughout the State of Nevada is narrowly tailored to effectuate a substantial governmental interest, such ban fails to meet the constitutional standards set forth in *Central Hudson*.

### C.    Ban on advertising in counties where legal brothels are prohibited

N.R.S. § 201.430 bans brothels from advertising in counties where prostitution is illegal; N.R.S. § 201.440 bans anyone from publishing advertisements from brothels in counties where prostitution is illegal.  In addition to the purported governmental interests stated above – protection of children and limiting the "vice" activity of legal prostitution, Defendants have offered two other justifications for this prohibition. The first is to limit the alleged promotion of illegal prostitution that will result from the advertising of legal brothels in counties where such establishments are not located. The second is to protect county autonomy in this area.

### 1.    Promotion of illegal prostitution

Defendants have posited that advertising of licensed brothels in counties that by statute or county option do not have legal prostitution will promote and increase illegal prostitution in those

1  counties. While decreasing illegal prostitution is clearly a substantial governmental interest,
2  Defendants have failed to demonstrate how the statutes in question here would help the bring about
3  that interest. Defendants' suggestion is, at best, highly speculative. The opposite effect is at least as
4  plausible if not more so.  It is more likely that tourists who are unclear about what is legal and what
5  is not will be better able to discern, through truthful advertising, which establishments are lawful.
6  Defendants have failed to show that the ban on legal brothel advertising in counties without such
7  brothels is justified based on a desire to limit illegal prostitution.

8  **2.     Protecting county option**

9  Defendants, citing *United States v. Edge Broadcasting Company*, 509 U.S. 418 (1993), argue
10 that the ban on legal brothel advertising in counties without legal brothels serves the substantial
11 governmental interest of protecting the interests of the citizens of each individual county.  In *Edge*,
12 the U.S. Supreme Court upheld a federal law that prohibited lottery advertising by radio stations
13 located in states that did not operate lotteries. There, the federal government's stated interest was "to
14 accommodate non-lottery states' interest in discouraging public participation in lotteries, even as they
15 accommodate the countervailing interests of lottery States."   509 U.S. at 433-434.  *Edge*
16 *Broadcasting* was decided prior to *44 Liquormart* and also prior to the decision in *Greater New*
17 *Orleans Broadcasting Association, Inc. v. United States*, 527 U.S. 173 (1999), which held that under
18 the *44 Liquormart* precedent an FCC regulation restricting advertisements related to gambling, for
19 reasons similar to those in *Edge*, could not meet the standards of the *Central Hudson* test.

20 It should also be noted that *Edge Broadcasting*  involved federal regulations concerning
21 broadcast advertising.  Regulation of broadcasting can be more restrictive than for other media.  In
22 *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997),  the Supreme Court noted that
23 several prior cases had  recognized special justifications for regulation of the broadcast media "that
24 are not applicable to other speakers," including "the history of extensive Government regulation of
25 the broadcast medium," (citing *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 399-400 (1969),
26 "the scarcity of available frequencies at its inception," (citing *Turner Broadcasting System, Inc. v.*
27 *FCC*, 512 U.S. 622, 637-638 (1994)),  and broadcasting's  "invasive" nature," (citing *Sable*
28 *Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 128 (1989)). From a regulatory standpoint, each

9

medium of expression creates different circumstances and must therefore be evaluated differently. *See*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557 (1975); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952). As such, "[T]he First Amendment has a special meaning in the broadcasting context." *FCC v. Pacifica Foundation*, 438 U.S. 726, 741, n. 17 (1978). Thus, whatever the authority of *Edge Broadcasting* may be within the broadcasting context, its holding cannot be applied to the regulatory scheme at issue here, as this scheme is not limited to the broadcast media.

While somewhat different given that this case involves different counties instead of different states, this situation here can best be compared to that in *Bigelow v. Virginia,* 421 U.S. 809 (1975), where the Supreme Court reversed the conviction of a newspaper editor for running an ad for legal abortions services in New York in defiance of a Virginia statute prohibiting advertising within the State of Virginia of any means of procuring an abortion, which was illegal in Virginia at that time. 421 U.S. at 812-813. The Court specifically rejected the idea that Virginia had the ability to prohibit advertising about lawful activity in another state simply because that activity was not lawful in Virginia.[2] *Id*. at 824-825:

> "A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State. It may seek to disseminate information so as to enable its citizens to make better informed decisions when they leave. But it may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State."

This is no less true for counties than it is for states. Thus, the statues at issue fail to meet the *Central Hudson* test for the purported justification of protecting the interests of individual counties.

**V.     Conclusion**

It is hereby ordered that N.R.S.§ 201.430 and N.R.S. § 201.440  violate the First and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of the Nevada

---

[2]     *Bigelow's* 1975 ruling occurred after the United States Supreme Court determined that there exists a constitutional right to abortion  in *Roe v. Wade,* 410 U.S. 113 (1973). However, when the newspaper editor in *Bigelow* was arrested for running the New York abortion advertisement, the State of Virginia had, in fact, banned all abortions and  advertising about them. *Roe v. Wade,* and the subsequent amended statute,  played no role in the *Bigelow* decision. 421 U.S. at 813, n.3.

Constitution[3] and are unenforceable, insofar as they relate to legal licensed brothels.

Dated this 1st day of August, 2007.

_____      _____
                                                            Hon. James C. Mahan

Respectfully submitted by:

/s/ Allen Lichtenstein                          /s/ Lee Rowland
Allen Lichtenstein                              Lee Rowland
General Counsel,                                Staff Attorney, ACLU of Nevada
ACLU of Nevada                                  NV Bar No. 10209
NV Bar No. 3992                                 732 South Sixth Street, Suite 200A
3315 Russell Road, No. 222 89120                Las Vegas, NV 89101
702-433-2666 - phone                            702-366-1902 -phone
702-433-9591 - fax                              702-366-1331-fax
alichtensteinlaw@aol.com                        rowland@aclunv.org

                                                Attorneys for Plaintiffs Las Vegas, Nevada

---

[3] The rights guaranteed by Article 1 Section 9 of the Nevada Constitution are coextensive with those protected by the First Amendment to the United States Constitution. *University and Community College System of Nevada v. Nevadans for Sound Government,* 120 Nev. 712, 722, 100 P.3d 179, 187 (2004).

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of July 2007, I deposited for mailing, first class, postage prepaid, at Las Vegas, Nevada a true and correct copy of the foregoing document addressed as follows:

Robert J. Gower
Deputy District Attorney
200 S. Grand Central Parkway, 5th Floor
Las Vegas, NV 89155

Joshua Hicks
Deputy Attorney General
100 North Carson Street
Carson City, NV 89701-4717

/s/ Allen Lichtenstein
_____